UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ELIJAH BUOI,<br><br>Defendant | Criminal No. 20cr10130<br><br>Violations:<br><br>Counts One-Four: Wire Fraud<br>(18 U.S.C. § 1343)<br><br>Count Five: False Statements to a Financial Institution<br>(18 U.S.C. § 1014)<br><br>Wire Fraud Forfeiture Allegation:<br>(18 U.S.C. § 981(a)(1)(C) and<br>28 U.S.C. § 2461)<br><br>False Statement Forfeiture Allegation:<br>(18 U.S.C. § 982(a)(2)(A)) |

INDICTMENT

At all times relevant to this Indictment:

General Allegations

A. *Relevant Individuals and Entities*

1. The defendant, ELIJAH BUOI ("BUOI"), was a resident of Winchester, Massachusetts. BUOI was the President and CEO of Sosuda Tech, LLC ("Sosuda").

2. Sosuda was a Massachusetts company that was registered with the Massachusetts Secretary of State on or about May 1, 2019. The company was initially registered under the name South Sudanese American Technologies, LLC. On or about May 15, 2019, the name was changed from South Sudanese American Technologies, LLC to Sosuda. Sosuda advertised that it provided various technology services to businesses.

3. Bank of America, N.A. ("Bank of America") was a federally insured financial institution based in Charlotte, North Carolina with branches throughout the United States. Bank of America participated as a lender in a program referred to as the Paycheck Protection Program ("PPP") operated by the United States Small Business Administration ("SBA"). As a PPP lender, Bank of America was authorized to lend funds to eligible borrowers under the terms of the PPP.

4. Sosuda maintained an account at Bank of America. BUOI was the sole signatory on that account.

5. Wells Fargo Bank ("Wells Fargo") was a federally insured financial institution based in Sioux Falls, South Dakota with branches throughout the United States.

6. Lendio, Inc. ("Lendio") was a company that specialized in facilitating small-business lending. Lendio was headquartered in Lehi, Utah. Lendio participated in the PPP by, among other things, matching small businesses seeking PPP loans with authorized lenders. The authorized lenders, not Lendio, decided whether to approve the PPP loan applications and if approved, financed the PPP loans.

7. Fundbox, Inc. ("Fundbox") was a financial technology company based in San Francisco, California. Fundbox participated in the PPP as a lender and, as such, was authorized to lend funds to eligible borrowers under the terms of the PPP. Fundbox maintained a bank account at Wells Fargo.

8. Newtek Small Business Finance, LLC ("Newtek"), which is owned by Newtek Business Services Corp, was a non-bank lender based in Lake Success, New York. Newtek participated in the PPP as a lender and, as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

9.      The SBA was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees.

B.  *The Paycheck Protection Program*

10.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through the PPP.

11.     To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses; (b) number of employees; and (c) whether the United States is the principal place of residence for all employees included in the applicant's payroll calculation. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

12. A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

13. PPP loan proceeds were required to be used on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan is eligible for forgiveness if the business spent the loan proceeds on these expense items within a designated period of time and used a certain portion of the loan towards payroll expenses.

### Scheme to Defraud

14. Beginning in or around April 2020, and continuing until at least in or around June 2020, in the District of Massachusetts and elsewhere, BUOI devised a scheme to defraud, and to obtain PPP funds, by filing false and fraudulent PPP loan applications with participants in the PPP program, including Bank of America, Lendio, Fundbox, and Newtek.

15. The purpose of the scheme was for BUOI to obtain PPP loan proceeds under false and misleading pretenses, including false statements about the number of Sosuda employees, the location of Sosuda's employees, the average monthly expenses associated with payroll for Sosuda's employees, and false documents and forms submitted in support of PPP loan applications.

A. The Bank of America PPP Loan Application

16. In furtherance of the scheme, on or about April 21, 2020, BUOI submitted a false and misleading PPP loan application to Bank of America in the name of Sosuda seeking approximately $7,500,000 in PPP loan funds (the "Bank of America PPP Application"). BUOI signed the Bank of America PPP Loan Application and certified that the application and the information provided in all supporting documents and forms was true and accurate.

17. The Bank of America PPP Loan Application falsely stated that Sosuda's average monthly payroll was $3 million and that the company had 353 employees. BUOI certified that the United States was the principal place of residence for those employees. In addition, BUOI submitted with the Bank of America PPP Loan Application what purported to be Employer's Quarterly Federal Tax Returns ("IRS Form 941") for Sosuda for the first quarter of 2020. On the purported IRS Form 941, BUOI falsely claimed that Sosuda had 353 employees and paid $9,498,987 in wages, tips, and other compensation during that period.

18. BUOI also submitted a falsified IRS Form 940, an Employer's Annual Federal Unemployment Return, purporting to show Sosuda's total payments to employees for 2019. According to the IRS Form 940, Sosuda made $34,800,000 in payments to employees in 2019 and did not have employees in any other state except Massachusetts.

19. The Bank of America PPP Loan Application was denied.

B. The Lendio PPP Loan Application

20. On or about May 21, 2020, BUOI submitted a false and misleading PPP application to Lendio in the name of Sosuda seeking approximately $2,000,000 in PPP funds (the "Lendio PPP Loan Application"). BUOI signed the Lendio PPP Loan Application and certified that the

application and the information provided in all supporting documents and forms was true and accurate.

21. The Lendio PPP Loan Application falsely stated that Sosuda's average monthly payroll was $150,000 and that the company had 18 employees. BUOI certified that the United States was the principal place of residence for those employees. In addition, BUOI submitted with the Lendio PPP Loan Application a purported IRS Form 941 for Sosuda for the first quarter of 2020. On the IRS Form 941, BUOI falsely claimed that Sosuda had 18 employees and paid $450,000 in wages, tips, and other compensation during that period.

22. BUOI also submitted a falsified IRS Form 940 purporting to show Sosuda's wages and federal payroll tax information for 2019. According to the IRS Form 940, Sosuda made $1,800,000 in payments to employees in 2019 and did not have employees in any other state except Massachusetts.

23. The Lendio PPP Loan Application was provided to an authorized SBA lender, which ultimately denied the application.

C. The Fundbox PPP Loan Application

24. On or about June 7, 2020, BUOI submitted a false and misleading PPP application to Fundbox in the name of Sosuda seeking approximately $2,000,000 in PPP funds (the "Fundbox PPP Loan Application"). BUOI signed the Fundbox PPP Loan Application, and certified that the application and the information provided in all supporting documents and forms was true and accurate.

25. The Fundbox PPP Loan Application falsely stated that Sosuda's average monthly payroll was $800,000 and that the company had 96 employees. BUOI certified that the United

States was the principal place of residence for those employees. In addition, BUOI submitted with the Fundbox PPP Loan Application a purported IRS Form 941 for Sosuda for the first quarter of 2020. On the IRS Form 941, BUOI falsely claimed that Sosuda had 96 employees and paid $2,400,000 in wages, tips, and other compensation during that period.

26. BUOI also submitted a falsified IRS Form 940 purporting to show Sosuda's wages and federal payroll tax information for 2019. According to the IRS Form 940, Sosuda made $9,600,000 in payments to employees in 2019 and did not have employees in any other state except Massachusetts.

27. The Fundbox PPP Loan Application was approved. On or about June 15, 2020, Fundbox distributed approximately $2,000,000 in PPP loan funds to BUOI via a wire transfer in interstate commerce from Fundbox's bank account at Wells Fargo to Sosuda's bank account at Bank of America.

D. The Newtek PPP Loan Application

28. On or about June 9, 2020, BUOI submitted a false and misleading PPP application to Newtek in the name of Sosuda seeking approximately $2,000,000 in PPP funds (the "Newtek PPP Loan Application"). BUOI signed the Newtek PPP Loan Application, and certified that the application and the information provided in all supporting documents and forms was true and accurate.

29. The Newtek PPP Loan Application falsely stated that Sosuda's average monthly payroll was $800,000 and that the company had 96 employees. BUOI certified that the United States was the principal place of residence for those employees. In addition, BUOI submitted with the Newtek PPP Loan Application a purported IRS Form 941 for Sosuda for the first quarter of

2020. On the IRS Form 941, BUOI falsely claimed that Sosuda had 96 employees and paid $2,400,000 in wages, tips, and other compensation during that period.

30. BUOI also submitted a falsified IRS Form 940 purporting to show Sosuda's wages and federal payroll tax information for 2019. According to the IRS Form 940, Sosuda made $9,600,000 in payments to employees in 2019 and did not have employees in any other state except Massachusetts.

31. The Newtek PPP Loan Application was denied.

## COUNTS ONE - FOUR
### Wire Fraud
### (18 U.S.C. § 1343)

The Grand Jury charges:

32. The Grand Jury re-alleges and incorporates by reference paragraphs 1-31 of this Indictment.

33. On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

### ELIJAH BUOI,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, as set forth below:

| Count | Approximate Date | Description |
|---|---|---|
| 1 | May 21, 2020 | The Lendio PPP Loan Application electronically submitted by Elijah Buoi, in Massachusetts, and routed interstate through Lendio's servers outside of Massachusetts. |
| 2 | June 7, 2020 | The Fundbox PPP Loan Application electronically submitted by Elijah Buoi, in Massachusetts, and routed interstate through Fundbox's servers outside of Massachusetts. |
| 3 | June 9, 2020 | The Newtek PPP Loan Application electronically submitted by Elijah Buoi, in Massachusetts, and routed interstate through Newtek's servers outside of Massachusetts. |
| 4 | June 15, 2020 | Wire transfer of $2,000,000 from Fundbox's account at Wells Fargo to Sosuda's account at Bank of America. |

All in violation of Title 18, United State Code, Section 1343.

## COUNT FIVE
## False Statements to a Financial Institution
## (18 U.S.C. § 1014)

The Grand Jury further charges:

34. The Grand Jury re-alleges and incorporates by reference paragraphs 1-31 of this Indictment.

35. On or about April 21, 2020, in the District of Massachusetts and elsewhere, the defendant,

### ELIJAH BUOI,

knowingly made a false statement and report for the purpose of influencing in any way the actions of Bank of America, an institution the accounts of which are insured by the Federal Deposit Insurance Corporation ("FDIC"), upon any loan, as follows: in the Bank of America PPP Loan Application, BUOI falsely represented that Sosuda had 353 employees, falsely represented that Sosuda's average monthly payroll was $3 million, and in support of the loan application, BUOI submitted falsified IRS Forms 940 and 941.

All in violation of 18 U.S.C. § 1014.

## WIRE FRAUD FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The Grand Jury further finds:

36. Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 1343, set forth in Counts 1 through 4, the defendant,

ELIJAH BUOI,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses. The property to be forfeited includes, but is not limited to, the following assets:

   a. $1,200,000 seized from Bank of America account ending in 0252, in the name of Sosuda Tech LLC;

   b. $772,000 seized from Bank of America account ending in 2641, in the name of Sosuda Tech LLC; and

   c. $28,000, to be entered in the form of a forfeiture money judgment.

37. If any of the property described in Paragraph 36, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

11

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 38 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

## FALSE STATEMENT FORFEITURE ALLEGATION
(18 U.S.C. § 982(a)(2)(A))

38.     Upon conviction of the offense in violation of Title 18, United States Code, Section 1041, set forth in Count 5, the defendant,

ELIJAH BUOI,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of such offense.

39.     If any of the property described in Paragraph 38, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(2), as a result of any act or omission of the defendant --

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 40 above.

All pursuant to Title 18, United States Code, Section 982(a)(2).

A TRUE BILL

/s/ [signature]
FOREPERSON

/s/ [signature]
MACKENZIE A. QUEENIN
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS

/s/ [signature]
DELLA SENTILLES
TRIAL ATTORNEY
FRAUD SECTION, DEPARTMENT OF JUSTICE

District of Massachusetts: JULY 14, 2020
Returned into the District Court by the Grand Jurors and filed.

/s/ Noreen A. Russo
DEPUTY CLERK

at 4:02 PM

on 7/14/20